IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NICHOLAS P. MILLER,** | : | CIVIL ACTION |
| **Plaintiff,** | : | |
| | : | |
| v. | : | NO.  23-4192 |
| | : | |
| **CHESTER COUNTY** | : | |
| **COMMISSIONERS,** *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM

**MURPHY, J.**                                                                                        **March 13, 2024**

Plaintiff Nicholas P. Miller, who is currently detained at the Chester County Prison ("CCP"), filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, asserting violations of his constitutional rights arising from instances of alleged indifference to his serious medical needs.[1]  Currently before the Court are Mr. Miller's Complaint ("Compl." (DI 2)), and his motion for leave to proceed *in forma pauperis* and Prisoner Trust Fund Account Statement.  (DI 1, 3.)  Mr. Miller asserts claims against the Chester County Commissioners, PrimeCare Medical, Inc ("PrimeCare"), PrimeCare employee Karen Murphy, and CCP Warden Holland.  (Compl. at 3-4.)  Mr. Miller checked boxes indicating he is pursuing official capacity claims only against the Defendants.  (*Id.*)  For the following reasons, the Court will grant Mr. Miller leave to proceed

---

[1] Mr. Miller originally filed the Complaint on his own behalf and on behalf of CCP inmates Matthew Davis and Jacob Fulton, neither of whom signed the Complaint.  (*See* SAC.)  Additionally, none of the purported plaintiffs paid the required filing fee, and neither Mr. Davis nor Mr. Fulton requested leave to proceed *in forma pauperis*.  The Court entered an Order granting Mr. Davis and Mr. Fulton thirty (30) days in which to cure these deficiencies.  (DI 5.)  Mr. Davis's subsequent request to voluntarily dismiss his claims (DI 8) was granted, and Mr. Fulton's claims were dismissed without prejudice for failure to prosecute when he failed to respond to the Court's deficiency Order.  (DI 9.)

*in forma pauperis*.  Mr. Miller's claims under the Americans with Disabilities Act and the Rehabilitation Act against the named Defendants will be dismissed with prejudice.  The remainder of Mr. Miller's Complaint will be dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Mr. Miller will be granted leave to file an amended complaint.

I.      FACTUAL ALLEGATIONS[2]

Mr. Miller alleges he entered CCP on May 19, 2023.  Upon entering, he identified himself as suffering from substance abuse disorder, opioid use disorder, traumatic brain injury, and mental health issues.  (Compl. at 5.)  He alleges that he related this information to Defendants Murphy and Holland, as well as non-Defendants Clyde King and Director Mulroney.  He avers that he requested to be placed on CCP's medication assisted treatment plan for opioid use disorder, and that he relayed this request to each of the aforementioned individuals.  (*Id*.)  He alleges that at some time between May 19 and June 2, 2023, he was approved for placement in the program, but as of the date of the filing of the Complaint in October, 2023, he had not received any treatment.  (*Id*.)  He alleges that the jail has been delaying the start of his treatment for non-medical security reasons.  (*Id*.)  He claims that because of the delay in treatment, he has suffered physical and mental withdrawal symptoms for which he has been hospitalized.  (*Id*. at 6.)  He claims to suffer pain and discomfort because he has been given the wrong medication for such a long period.  (*Id*.)  He alleges that one-on-one talk therapy is not available at CCP and his mental and physical needs are not being met.  (*Id*.)  Mr. Miller also alleges that on May 30, 2023,

---

[2] The factual allegations set forth in this Memorandum are taken from Mr. Miller's Complaint (DI 2).  The Court adopts the pagination supplied by the CM/ECF docketing system.

he suffered a transient ischemic attack ("TIA") in his cell, and waited 18 hours on the floor of his cell for help before he was discovered and subsequently hospitalized. (*Id*.)

Mr. Miller asserts claims for violations of his Eighth and Fourteenth Amendment rights, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"). (*Id*. at 4.) He seeks injunctive relief and money damages. (*Id*. at 6.)

## II. STANDARD OF REVIEW

The Court will grant Mr. Miller leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As Mr. Miller is proceeding *pro se,* the Court construes his

---

[3] However, as Mr. Miller is a prisoner, he will be obligated to pay the full filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

Mr. Miller asserts claims for deliberate indifference to his serious medical needs in violation of his Eighth and Fourteenth Amendment rights.[4]  The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law.").  "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

### A. Official Capacity Claims Against Holland and Murphy

In drafting his Complaint, Mr. Miller checked the box on the form he used indicating that he seeks to name the Defendants in their official capacities only.  Mr. Miller appears not to have understood the implication of checking only the official capacity box.  Claims against county employees such as Warden Holland named in their official capacity are indistinguishable from claims against the governmental entity that employs the Defendant, here Chester County. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an

---

[4] Mr. Miller alleges that he was a pretrial detainee at the time of the events giving rise to his claims, (*id*. at 5), and his claims are, therefore, properly analyzed under the Fourteenth Amendment and not the Eighth. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

agent.'") (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*  Because Mr. Miller does not attempt to allege a municipal capacity claim, *see Monell*, 436 U.S. at 694 (holding that, to state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation) the Court will liberally construe the Complaint to assert a claim against Warden Holland in his individual capacity.  *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("To determine whether a plaintiff sued state officials in their official capacity, we first look to the complaints and the course of proceedings." (quotations omitted)); *Coward v. City of Philadelphia*, No. 21-1619, 2021 WL 4169422, at *3 (E.D. Pa. Sept. 13, 2021) (permitting claim against defendant in his individual capacity to proceed event though "[plaintiff] did not check the box indicating a desire to sue [that defendant] in his individual capacity" where the allegations clearly sought relief based on the defendant's conduct).

      Mr. Miller's official capacity claim against PrimeCare employee Karen Murphy is not cognizable because Prime Care Medical is a private entity.  *See Kreis v. Northampton Cty. Prison*, 2022 WL 4236692, at *8 (E.D. Pa. Sept. 14, 2022) (stating that official capacity claims are "inapplicable to suits against private parties where the entity is also susceptible to suit") citing *Owens v. Connections Cmty. Support Programs, Inc.,* 840 F. Supp. 2d 791, 796 (D. Del. 2012) ("Generally, a suit against a [ ] public officer in his or her official capacity is used to compel that officer to take some official action [and that] concept . . . is inapplicable to suits against private parties where the entity is also susceptible to suit.").  Even if official capacity suits against individuals who work for private companies were cognizable, the suit would, in effect, be one against the company for whom that individual works.  *See Graham,* 473 U.S. at

5

105. Mr. Miller's official capacity claim against Murphy will be dismissed, and the Court will liberally construe the Complaint to assert a claim against Murphy in her individual capacity. *See Downey*, 968 F.3d at 310; *Coward*, 2021 WL 4169422, at *3.

### B. Claims Against County Commissioners

Mr. Miller identifies the Chester County Commissioners as Defendants in his Complaint, but does not include any factual allegations describing any conduct on the part of any individual Commissioner or the body as a whole. For this reason, he has failed to state a plausible claim against the Commissioners and the claim will be dismissed. *See Rode*, 845 F.2d at 1207. *See also Rice v. Dauphin Cty. Prison*, 2016 WL 4264386 at *2 (M.D. Pa. Aug. 12, 2016) (dismissing on statutory screening prisoner's Eighth Amendment claims against Dauphin County Commissioners where plaintiff "fail[ed] to allege that the Commissioners knew of, and acquiesced in, or played an affirmative part in, the alleged unconstitutional conduct.")

It is possible that by naming the Commissioners as Defendants, Mr. Miller intended to assert a municipal liability claim against Chester County.[5] To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell*, 436 U.S. at 694; *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). It is not enough, however, to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate

---

[5] Chester County's official website reflects that the elected Commissioners "are responsible for policy-making, fiscal management and the administration of county affairs," and that they serve on the Prison Board. *See* https://www.chesco.org/1341/Overview (last accessed March 11, 2024).

6

cause' of his injuries." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged.  *Id.*  Allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support a claim against the City.  *See, e.g.*, *Szerensci v. Shimshock*, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

Mr. Miller does not include any factual allegations in his Complaint describing any custom or policy of Chester County that resulted in the violation of his constitutional rights.  Accordingly, he has not stated a plausible municipal liability claim.  Mr. Miller will be granted leave to amend his claims against the Chester County Commissioners and his claim, if any, against Chester County.

### C. Claims Against PrimeCare

Mr. Miller identifies PrimeCare as a Defendant, but other than alleging that Defendant Murphy is a PrimeCare employee, he does not include any factual allegations describing any conduct engaged in by PrimeCare and, therefore, has not stated a plausible claim against it.  *See Rode*, 845 F.2d at 1207.  The United States Court of Appeals for the Third Circuit has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'"  *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale*, 318 F.3d at 583).  Rather, in order to hold a private health care company like PrimeCare liable for a constitutional violation under § 1983, Mr. Miller must allege the provider had "a relevant . . . policy or custom, and that

7

the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d 575, 583-84 (citing *Bd. of the Cty. Comm'rs of Bryan Cty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.") (citations and quotations omitted). Generalized allegations of inadequate care fail to state a claim where, as in this case, the Complaint does not allege a constitutional violation attributable to PrimeCare's policies or customs. *See Brown v. Delaware Cty. Prison Bd. of Inspectors*, 741 F. App'x 135, 138 (3d Cir. 2018) (*per curiam*) ("Brown's vague and conclusory allegation that the defendants had a policy or custom of 'fail[ing] to provide an adequate level of security staffing,' is insufficient to state a claim.").

A plaintiff may also state a basis for liability against an entity like PrimeCare by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). In the context of a contract medical provider, the provider's "failure to train or supervise must amount to a policy or custom in disregard of an obvious risk that its employees or agents would commit constitutional violations." *Ponzini v. PrimeCare Med., Inc.*, 269 F. Supp. 3d 444, 526 (M.D. Pa. 2017), *aff'd in part, vacated in part on other grounds sub nom. Ponzini v. Monroe Cty.*, 789 F. App'x 313 (3d Cir. 2019).

Mr. Miller does not include any allegation in his Complaint describing a policy or custom of PrimeCare that resulted in the alleged delay in his induction into CCP's medication assisted treatment program or the delay in his receipt of care following a TIA, nor does he allege that

8

PrimeCare's failure to supervise or train its employees caused these alleged instances of deliberate indifference to his serious medical needs. Because Mr. Miller's claim against PrimeCare is not plausible, it will be dismissed. Mr. Miller will be granted leave to amend this claim.

### C. Claims Against Warden Holland

Mr. Miller asserts a claim against Warden Holland. However, the only factual allegation in the Complaint as to Holland is that Mr. Miller advised him upon entering CCP that he had existing substance abuse problems and wanted to be included in CCP's medication assisted treatment program to address these conditions. (Compl. at 5.) Mr. Miller does not allege whether or how Holland contributed to the delay in Mr. Miller's entry into the program. Mr. Miller also does not allege whether or how Holland contributed to the delay in care Mr. Miller experienced after suffering a transient ischemic attack in his cell.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode*, 845 F.2d at 1207; *see also Jutrowski v. Township. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. New Jersey*

9

*Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Baker v. Monroe Township.*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

Because Mr. Miller fails to allege any conduct by Holland himself related to the delay in his treatment, he may have named Holland as a Defendant merely because, in his role as the Warden of CCP, he is responsible for day-to-day operations of the prison. To the extent Mr. Miller seeks to assert a claim against Holland based on the conduct of another CCP employee, he cannot do so, because liability under § 1983 cannot be predicated on a respondeat superior basis. *Chavarriaga*, 806 at 227; *Robinson v. Delbalso*, No. 22-2378, slip op. at 3-4 (3d. Cir. Nov. 28, 2022) (*per curiam*). Rather, there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). To set forth a claim for supervisory liability under the policy-and-practice strand of supervisory liability, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Chavarriaga.*, 806 F.3d at 227 (quoting *Brown v. Muhlenberg Township*, 269 F.3d 205, 216 (3d Cir. 2001)). "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury

and must establish a link between the supervisor, the act, and the injury." *Id.* "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).

Mr. Miller alleges in his Complaint that his entry into CCP's treatment plan was delayed by the jail for non-medical security reasons. (Compl. at 5.) He does not allege that Holland identified a security risk associated with Mr. Miller's treatment or that he participated in any way in the decision to delay the treatment. Thus, Mr. Miller has not alleged that Holland personally participated in the violation of his rights. He also does not allege that Holland directed others to engage in conduct that violated Mr. Miller's rights. Additionally, Mr. Miller has not alleged that Holland maintained or failed to employ a specific policy or custom knowing that such conduct would likely result in a violation of Mr. Miller's rights. Mr. Miller's claim against Holland is not plausible and must be dismissed. Mr. Miller will be granted leave to amend this claim.

      **D.**      **Deliberate Indifference Claims and Claims Against Nurse Murphy**

Mr. Miller asserts that the Defendants were deliberately indifferent to his serious medical needs, both when they did not begin his medication assisted treatment program after he was

11

approved to participate in it and when they left him in his cell for 18 hours after he suffered a TIA before they provided medical treatment. (Compl. at 5-6.) As pled, the claim is not plausible.

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). The standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (*per curiam*).

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1023 (3d Cir. 1991).

Not every complaint of inadequate prison medical care rises to the level of deliberate indifference. *Anderson v. Price*, No. 22-3058 (3d Cir. Sept. 8, 2023). "Where a prisoner is receiving some amount of medical treatment, [courts] presume that the treatment is adequate absent evidence that it violates professional standards of care." *Id*. (affirming dismissal of deliberate indifference claims on screening) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990); *see also Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*) ("Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017); *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode*, 845 F.2d at 1207; *Dooley*, 957 F.3d at 374 ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

      Miller identifies PrimeCare Nurse Murphy, a medical professional, as a Defendant, but other than a single allegation that Mr. Miller advised Murphy upon entering CCP that he wanted to participate in CCP's substance abuse treatment program, he does not allege how she was deliberately indifferent to his serious medical needs. For example, he does not allege that it was her decision to delay his commencement of the drug treatment program, or that she was aware that he had fallen ill in his cell, but knowingly delayed or denied treatment. In fact, Mr. Miller does not identify which, if any, of the named Defendants denied or delayed the commencement of his medication assisted treatment program or why, or which of the named Defendants knew he

had suffered a TIA but left him in his cell for 18 hours before providing treatment. He does not provide facts to put the Defendants on notice of the nature of the conduct giving rise to the claims against them, or how their actions violated his constitutional rights. Mr. Miller's claims against Defendant Murphy and his deliberate indifference claims will be dismissed for failure to state a plausible claim under 28 U.S.C. § 1915(e)(2)(B)(ii). Because the Court cannot state with certainty that Mr. Miller can never state plausible claims, he will be permitted to file an amended complaint to "flesh out [his] allegations by . . . explaining in the amended complaint the 'who, what, where, when and why' of [his] claim." *See Davis v. IRS*, 2022 WL 407639, at *3 (E.D. Pa. Feb. 9, 2022) (citing *Gambrell v. S. Brunswick Bd. of Educ.*, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019)).

    **E.**    **Claims Under the ADA and the RA**

Mr. Miller asserts claims against the Defendants under Title II of the ADA and Section 504 of the RA. The Court understands these claims to be based on the delay in the commencement of Mr. Miller's participation in CCP's medication assisted drug treatment program.[6] "Both the ADA and the RA require public entities, including state prisons, to provide,

---

[6] Section 504 of the RA provides:

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).

Section 202 of the ADA provides:

> Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

in all of their programs, services, and activities, a reasonable accommodation to individuals with disabilities." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 287 (3d Cir. 2019). "[W]hen a plaintiff sues under both the RA and the ADA, [courts] often address both claims in the same breath, construing the provisions of both statutes in light of their close similarity of language and purpose," since "the scope of protection afforded under both statutes, i.e., the general prohibition against discrimination, is materially the same." *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 117 (3d Cir. 2018) (internal quotations, citations, and alterations omitted). To state a plausible claim under either the ADA or the RA, Mr. Miller "must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess*, 933 F.3d at 288-89. To allege that he is a "qualified individual with a disability," Mr. Miller must allege that he has a "disability" which is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual. . . ." 42 U.S.C. § 12102(1)(A).[7] "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id*. at § 12101(2)(A). The Supreme Court has construed the term "substantial" to exclude

---

42 U.S.C. § 12132. The United States Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting the phrase "services, programs, or activities" includes recreational, medical, educational, and vocational prison programs).

[7] Due to the "parallel definitions of disability" between the ADA and the RA, Courts use them interchangeably. *See e.g.*, *Marshall v. Sisters of Holy Fam. of Nazareth*, 399 F. Supp. 2d 597, 607 (E.D. Pa. 2005) (quoting *McDonald v. Com. of Pa., Dep't of Pub. Welfare, Polk Ctr.*, 62 F.3d 92, 95 (3d Cir. 1995)).

"impairments that interfere in only a minor way" with a major life activity and the term "major life activities" to refer "to those activities that are of central importance to daily life." *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 196-97 (2002); *see also* 28 C.F.R. § 35.108. Therefore, "merely having an impairment does not make one disabled for purposes of the ADA." *Id.* at 195.

The proper defendant under a Title II ADA claim is the public entity or an individual who controls or directs the functioning of the public entity. *See Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002). The proper Defendant under an RA claim is the public entity receiving federal assistance. *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) (stating that "suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals"). Therefore, as an initial matter, any individual capacity ADA and RA claims asserted against the Chester County Commissioners, Warden Holland, and Nurse Murphy must be dismissed with prejudice, because these Defendants are not public entities. *See Kokinda v. Pa. Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (*per curiam*) ("Kokinda's claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability."); *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (*per curiam*) ("[T]he District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim."); *A.W.*, 486 F.3d at 804 (stating that "suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals"). Additionally, PrimeCare, which is not a public entity, is also not a proper defendant, and to the extent Mr. Miller asserts ADA and RA claims against PrimeCare, they, too, will be dismissed with prejudice. *Keifer v. PrimeCare Med., Inc.*, 2017

WL 3142279, at *3 (E.D. Pa. July 24, 2017) (granting motion to dismiss ADA claim against PrimeCare because it is not "an instrumentality of the state or otherwise a public entity").

As pled, Mr. Miller's ADA and RA claims are not plausible. First, the only proper Defendant to claims under the ADA and RA in this case would be Chester County, which is not a named Defendant. Next, though Mr. Miller broadly alleges in conclusory fashion that he was discriminated against (*see* Compl. at 8), he alleges no facts to suggest that he was discriminated against because of a disability or denied accommodations for a disability with respect to any programs, services, or activities at CCP. While Mr. Miller alleges that he suffers from substance abuse disorders and mental health issues, (*see* Compl at 5), the specific nature of any alleged disability is unclear, and Mr. Miller does not include factual allegations in his Complaint describing how any disability limits him in a major life activity, as required to state plausible ADA and RA claims. Additionally, as noted, the Court understands Mr. Miller to be basing his ADA and RA claims on the delay in commencement of his drug treatment program. However, "decisions about a prisoner's medical treatment generally do not give rise to a claim under the ADA." *Nunez v. Prime Care Health, Inc.*, 2019 WL 1400466, at *1 n.3 (E.D. Pa. Mar. 27, 2019) (citing cases); *see also Kokinda*, 663 F. App'x at 159 ("The District Court was also correct to conclude . . . that Kokinda's ADA claims fail because the ADA prohibits disability-based discrimination, not inadequate treatment for the disability." (footnotes and internal quotations omitted)).

Mr. Miller's ADA and RA claims against the named Defendants will be dismissed with prejudice. Mr. Miller will be granted leave to assert his ADA and RA claims in an amended complaint against a proper Defendant.

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant Mr. Miller leave to proceed *in forma pauperis*.  Mr. Miller's claims under the Americans with Disabilities Act and the Rehabilitation Act against the named Defendants will be dismissed with prejudice.  The remainder of Mr. Miller's Complaint will be dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Mr. Miller will be granted leave to file an amended complaint. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).