**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NICHOLAS P. MILLER,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO.  23-4192** |
| | : | |
| **CHESTER COUNTY** | : | |
| **COMMISSIONERS,** *et al.*, | : | |
| **Defendants.** | : | |

<u>**MEMORANDUM**</u>

**MURPHY, J.**                                                                                     **July 31, 2024**

Currently before us is an Amended Complaint ("AC" (DI 14)) filed *pro se* by Plaintiff

Nicholas Paul Miller, who is currently detained at Chester County Prison ("CCP").  The AC,

filed pursuant to 42 U.S.C. § 1983, asserts violations of Mr. Miller's constitutional rights arising

from events that allegedly occurred at CCP.  Mr. Miller names the following Defendants:

Chester County, CCP, PrimeCare Medical, Inc. ("PrimeCare"), PrimeCare employee Karen

Murphy, and CCP employees Clyde King, Warden Holland, Deputy Warden Roberts, and former

Warden Phillips.  (AC at 2-7.)  Mr. Miller asserts claims against the individual Defendants in

their individual and official capacities.  (*Id.*)  He asserts his claims against the institutional

Defendants in their official capacities only.  (*Id.*)  For the following reasons, we will dismiss

with prejudice Mr. Miller's claims against CCP and his official capacity claims against the

individual Defendants.  Mr. Miller's Fourteenth Amendment deliberate indifference claims, his

claims asserted pursuant to *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658 (1978), and his

claims asserted under Title II of the Americans with Disabilities Act of 1990 ("ADA") and

Section 504 of the Rehabilitation Act ("RA") will be served for a responsive pleading.

I.      **PROCEDURAL POSTURE AND FACTUAL ALLEGATIONS**[1]

The gravamen of Mr. Miller's original Complaint was that he was denied medically assisted treatment ("MAT") for opioid use disorder, and that after he suffered a transient ischemic attack ("TIA") in his cell, he did not receive care for 18 hours.  *Miller v. Chester Cnty. Comm'rs.*, No. 23-4192, 2024 WL 1096530, at *1 (E.D. Pa. Mar. 13, 2024).  He asserted claims for deliberate indifference to his serious medical needs, and ADA and RA claims against unnamed Chester County Commissioners, PrimeCare, Murphy, and Holland.  *Id*. at *2.  Upon statutory screening of Mr. Miller's Complaint, the we dismissed his claims under the ADA and RA with prejudice because they were asserted against improper parties and dismissed his constitutional claims without prejudice for failure to state a claim.  *Id*. at *2-8.  He was granted leave to file an amended complaint.  Mr. Miller's AC is now ripe for screening.

Mr. Miller completed the pre-printed prisoner Complaint for Violation of Civil Rights and supplemented it with handwritten pages and attachments.  (*See* AC.)  We consider the entire filing to constitute the AC.  Mr. Miller alleges that he arrived at CCP on May 19, 2023 and was accepted into the Detox Unit.  (*Id*. at 18.)  He alleges he was given the wrong medication and treatment until he was discharged to the general population on May 29 or May 30.  He further alleges that for the next 12 months, he received no MAT or medication for opioid use disorder, was forced to detox himself, and as a result, he experienced pain, mental anguish, auditory hallucinations, weight gain, and undue stress.  (*Id*.)  He also alleges that no therapy was available to him, and he was forcibly housed in a Mental Health Unit.  (*Id*.)

---

[1] The factual allegations set forth in this Memorandum are taken from Mr. Miller's AC. (DI 14).  We adopt the pagination supplied by the CM/ECF docketing system.

Mr. Miller alleges that Chester County, CCP, and PrimeCare crafted and administered a policy of "non-induction," which Mr. Miller describes as a policy pursuant to which inmates are not provided MAT for opioid use disorder if they cannot prove that they were receiving such treatment at the time they were arrested.  (*Id.* at 9.)  He alleges that former Warden Phillips, current Warden Holland, and Deputy Warden Roberts were involved in the crafting and day-to-day administration of this policy.  (*Id.*)  Mr. Miller alleges that the policy was crafted for security reasons and without regard for inmates' medical needs.  (*Id.*)  He asserts that the policy reflects deliberate indifference to the inmates' serious medical needs.  (*Id.*)

Mr. Miller alleges that because of this policy, Defendants King and Murphy could not begin MAT on inmates who had already been evaluated and identified as in need of treatment.  (*Id.*)  He alleges that because of the policy he has been waiting for induction into MAT for 12 months.  (*Id.*)

Included with the AC is a page of 18 typewritten paragraphs.  (*Id.* at 19.)  Therein, Mr. Miller describes his history of opioid use disorder and his experience at CCP.  (*Id.*)  He alleges that he has had opioid use disorder since 2016 and that it is a disability that affects every aspect of his life.  Because of it, he is unable to live on his own or keep a job.  (*Id.*)  He alleges that he repeatedly requested medication for opioid use disorder while at CCP but did not receive any due to the previously described policy against induction at CCP.  (*Id.*)  Mr. Miller alleges that Defendant King acknowledged that Mr. Miller had opioid use disorder and recommended him for MAT, but that he did not receive the medication because of the prison's policy of not providing MAT to inmates who did not have a prescription before arriving at CCP.  (*Id.*)  Mr. Miller alleges that Chester County oversees and is responsible for the operation of CCP.  He further alleges that Warden Holland is responsible for overseeing all aspects of CCP, including

the provision of medical care, and that he makes and enforces policy for CCP.  (*Id*.)  He further alleges that Defendant Roberts is the Deputy Warden of Treatment and is also responsible for drug treatment policy at CCP.  He alleges that PrimeCare contracts with Chester County to manage and provide medical care at CCP and participates in making policies related to medical care at CCP.  (*Id*.)  He alleges that Defendant Murphy oversees medical care at CCP and is responsible for policy development and implementation there.  Mr. Miller alleges that he wrote a request for medication to Murphy, but it was denied because he was not prescribed medication for opioid use disorder before arriving at CCP.  (*Id*.)  Mr. Miller alleges that Defendant King oversees providing medication for opioid use disorder at CCP.  He alleges that all of the Defendants are responsible for creating and enforcing a policy that has resulted in his denial of MAT for opioid use disorder.  (*Id*.)

Also attached to the AC are two completed CCP Inmate Request forms from Mr. Miller to Defendant Murphy dated September 6 and 24, 2023.  (*Id*. at 14, 11.)  In both, he requests that his MAT begin, asserts that he has been approved for the treatment but has not received it, and claims that he is suffering ill health as a result.  (*Id*.)  Mr. Miller also attaches three completed CCP Inmate Request forms from Miller to Defendant King dated July 24, 2023, August 19, 2023, and October 12, 2023.  (*Id*. at 12, 13, 15.)  Similar to those addressed to Murphy, the Requests inquire as to when his MAT induction will begin.  (*Id*.)  The forms reflect that Murphy and King responded, *inter alia*, that induction had not yet begun.  (*Id*. at 11-15.)  Also attached are the following: a page from a letter dated January 8, 2024 addressed to the Disability Rights Section of the United States Department of Justice purporting to describe Mr. Miller's experience at CCP from May 19, 2023 onward (*id*. at 16); a completed "MAT Community Referral Form" pertaining to Mr. Miller which, relevantly, notes that he is "still waiting 2-3-24"

4

for release to an Inpatient Treatment Program (*id*. at 17); a completed "Consultation Appointment/Emergency Rom Referral" pertaining to Mr. Miller and reflecting a diagnosis on June 13, 2023 of a TIA (*id*. at 20); and a page of what appear to be office notes completed by Defendant King pertaining to Mr. Miller that reflect, *inter alia*, that King found Mr. Miller to be a candidate for MAT (*id*. at 21).

Mr. Miller asserts Eighth and Fourteenth Amendment claims arising from the Defendants' alleged deliberate indifference to his serious medical needs, related *Monell* claims against Chester County and PrimeCare based on the alleged violation of his constitutional rights, and ADA and RA claims against the County related to the alleged failure to commence his MAT. (*Id*. at 4, 9.)  He requests injunctive relief and money damages. (*Id*. at 18.)

## II.   STANDARD OF REVIEW

We already granted Mr. Miller leave to proceed *in forma pauperis*, and his AC is therefore subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which requires us to dismiss the AC if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires a court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[a court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).

Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Mr. Miller is proceeding *pro se*, we construe his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

Mr. Miller asserts claims based on alleged violations of his constitutional rights. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

### A.    Claims Against CCP

Mr. Miller asserts claims against CCP. These claims will be dismissed with prejudice because a prison is not a "person" under Section 1983. *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010); *Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cnty. Farms Prison*, 426 F. Supp. 271 (E.D. Pa. 1976).

**B.** **Official Capacity Claims**

Mr. Miller asserts official capacity claims against individuals alleged to be Chester County employees and an individual alleged to be a PrimeCare employee. For the following reasons these claims will be dismissed.

Official capacity claims against county level employees such King, Holland, Deputy Roberts, and Phillips are indistinguishable from claims against the governmental entity that employs them, here Chester County. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell*, 436 U.S. at 690 n.55). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* To the extent these Defendants are sued in their official capacities, any such claims are dismissed as duplicative of the claims against Chester County. *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court correctly dismissed these defendants in their official capacity because the Staneks also sued the District."); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against Martin in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative."); *see also Graham*, 473 U.S. at 166 ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

Mr. Miller also asserts an official capacity claim against PrimeCare employee Karen Murphy. However, a claim asserted against an employee of PrimeCare in her "official capacity," is not cognizable because PrimeCare is a private entity. *See Kreis v. Northampton Cnty. Prison*, No. 21-2360, 2022 WL 4236692, at *8 (E.D. Pa. Sept. 14, 2022) (stating that official capacity

claims are "inapplicable to suits against private parties where the entity is also susceptible to suit" (quoting *Owens v. Connections Cnty. Support Programs, Inc.,* 840 F. Supp. 2d 791, 796 (D. Del. 2012))). Even if official capacity suits against individuals who work for private companies were cognizable, the suit would, in effect, be one against the company for whom that individual works. *See Graham,* 473 U.S. at 165-66. Since Mr. Miller named PrimeCare as a Defendant, his official capacity claim against Defendant Murphy will be dismissed with prejudice since it is duplicative of the direct claims against PrimeCare. *See Stanek*, 783 F.3d at 644; *Love-Lane*, 355 F.3d at 783.

### C.    Deliberate Indifference Claims Against Murphy and King

Mr. Miller raises Eighth and Fourteenth Amendment deliberate indifference to serious medical needs claims, based on the denial of MAT to treat his opioid abuse disorder.[2]  To state a Fourteenth Amendment claim based on the failure to provide medical care, a pretrial detainee must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "A medical need is serious, . . . if it is one that has been diagnosed by

---

[2] Mr. Miller alleges that he was a pretrial detainee at the time of the events in question, and therefore, the Fourteenth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (*per curiam*); *see also Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (deliberate indifference can be shown by a prison official "intentionally denying or delaying access to medical care or interfering with the treatment once prescribed") (internal citations and quotations omitted). "Not every complaint of inadequate prison medical care rises to the level of deliberate indifference." *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023). Allegations of medical malpractice, negligence, and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*). "Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). Nonetheless, "prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier or

less efficacious treatment' of the inmate's condition." *Id.* at 228 (quoting *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978)).

Mr. Miller alleges that he has a serious medical need, opioid use disorder, that he has been approved for MAT, and that despite numerous requests to begin the program, he has been denied MAT for non-medical reasons.  (AC at 19.)  He alleges that he advised Murphy and King that he was experiencing unpleasant symptoms related to detoxification without mediation but that they continued to deny him MAT because of the alleged policy of non-induction in place at CCP.  (*Id*.)  He alleges that he has suffered adverse health consequences as a result of the denial of MAT.  (*Id*. at 18.)  This claim will be served for a responsive pleading.

### D.   Deliberate Indifference Claims Against Holland, Roberts, and Phillips

Mr. Miller is asserting claims against former CCP Warden Phillips, current CCP Warden Holland, and Deputy Warden Roberts based on their participation in crafting and implementing the alleged non-induction policy that resulted in the denial of MAT to Mr. Miller.  As noted in the original screening Memorandum, there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Miller*, 2024 WL 1096530, at *5 (quoting *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015)).  First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).  "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*  "Put another way, the inmate

must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015).

Mr. Miller alleges that Holland, Roberts, and Phillips participated in the crafting and implementation of a policy that disallowed MAT for inmates suffering from opioid use disorder if they were not receiving similar treatment prior to arriving at CCP.  (AC at 19.)  He alleges that the policy was created for security reasons and without regard for the health of inmates.  (*Id.* at 9.)  He alleges that as a result of that policy, he has been unable to receive MAT while at CCP and has suffered physically and mentally.  (*Id.* at 9, 18, 19.)  This claim will be served for a responsive pleading.

### E.    *Monell* Claims

Mr. Miller asserts *Monell* claims against Chester County and PrimeCare based on his denial of MAT.  Local governments and municipalities are considered persons under § 1983. *Monell*, 436 U.S. at 690.  However, municipal liability cannot be predicated on a *respondeat superior* basis.  *Id.* at 691.  Rather, "under § 1983, local governments are responsible only for 'their *own* illegal acts.'"  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).  There are two ways for a § 1983 claim against a municipality to proceed: "[a] plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice."  *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (internal quotations and citations omitted).  "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the

action issues an official proclamation, policy, or edict." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted).

Similarly, "a private health company providing service to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (*per curiam*) (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)).  Rather, to hold a private healthcare company like PrimeCare liable for a constitutional violation under § 1983, a plaintiff must allege the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d 575, 583-84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.") (citations and quotations omitted).

Mr. Miller alleges that Chester County oversees and is responsible for the operation of CCP.  (AC at 19.)  He further alleges that CCP employees Holland, Roberts, King, and Phillips were involved with the crafting of the policy of non-induction that he alleges is the cause of his inability to receive MAT.  (*Id*. at 9, 19.)  We therefore understand Mr. Miller to allege that Chester County has a policy of not providing MAT to prisoners who were not receiving it before they arrived at CCP.  Mr. Miller also alleges that PrimeCare contracts with Chester County to provide medical care at CCP, and that its employee Murphy also participated in the crafting and administration of the non-induction policy.  (*Id*. at 19.)  We similarly understand Mr. Miller to allege that PrimeCare, too, has a policy of not providing MAT to prisoners who were not receiving it before they arrived at CCP.  Mr. Miller alleges that as a result of these Defendants' policy, he has been denied medical care and has suffered physically and mentally from the effects of detoxification.  This claim will be served for a responsive pleading. *See, e.g., Roman v. Cnty. of Chester*, No. 23-4032, 2024 WL 2136010, at *15 (E.D. Pa. May 13, 2024) (denying motion to dismiss *Monell* claims against Chester County and PrimeCare where plaintiff alleged that a policy allowed inmates to continue MAT at CCP, but not begin, or be inducted into the program even when the treatment was necessary*); Richardson v. Clark*, No. 22-0029, 2024 WL 1258653, at *6 (M.D. Pa. Mar. 25, 2024) (denying motion to dismiss deliberate indifference claim against PrimeCare where plaintiff presented a factual allegation in support of a custom or policy within the corporation that supports a deliberate indifference claim); *Cyr v. Schuylkill Cnty.*, No. 22-0453, 2023 WL 1107879, at *5 (M.D. Pa. Jan. 30, 2023) (denying motion to dismiss *Monell* claim against PrimeCare where plaintiff identified several policies, customs, and practices which PrimeCare allegedly violated); *see also Kinney v. Cnty. of Berks*, No. 22-2566, 2023 WL 3868379, at *12 (E.D. Pa. June 6, 2023) (denying PrimeCare motion to dismiss and

allowing case to proceed to discovery even though prisoner plaintiff did not allege a specific policy or custom where plaintiff adequately alleged that the actions he complained of were taken pursuant to some policy or custom that deprived him of his right to adequate medical treatment).

### F.      ADA and RA Claims

Mr. Miller asserts claims under Title II of the ADA and Section 504 of the RA against Chester County based on his exclusion from participation in the MAT program.  We previously dismissed similar claims asserted against PrimeCare and individual defendants, and at that time, discussed the law applicable to these claims at length.  *See Miller*, 2024 WL 1096530, at *7-8.  It is unnecessary to repeat that discussion here.

Mr. Miller alleges that he is a qualified individual with a disability, namely one who suffers from opioid use disorder and that Chester County deprived him of access to medical services by intentionally precluding him from participating in the MAT program that is provided to other inmates.  (AC at 8, 19).  Based on the allegations previously discussed, Mr. Miller claims that he was denied the benefit of a health service by reason of his disability, that the prison failed to accommodate his disability, and that the lack of accommodation was intentional and for nonmedical reasons.

Taking these allegations and the reasonable inferences they support in Mr. Miller's favor, he has plausibly alleged claims under the ADA and RA against Chester County.  *See Roman*, 2024 WL 2136010, at *17 (denying motion to dismiss ADA and RA claims where plaintiff alleged he suffered from opioid use disorder and was intentionally excluded from participating in MAT program); *Schiavone v. Luzerne Cnty.*, No. 21-1686, 2022 WL 3142615, at *8-9 (M.D. Pa. Aug. 5, 2022) (denying motion to dismiss ADA and RA claim against Luzerne County where plaintiff alleged that County deprived inmate of medical services including access to medication

and failed to accommodate her needs during her withdrawal from opioids); *McMillen v. Wetzel*, No. 20-192, 2021 WL 5088069, at *7 (W.D. Pa. Sept. 22, 2021) (denying motion to dismiss ADA claim where plaintiff pled that "he is a qualified individual with a disability based on his substance use disorder; he qualifies for the same treatment provided to [inmates] incarcerated after 2019; he was excluded from receiving these benefits as a result of the DOC's policy; and this resulted from his disability because Defendants have refused treatment for his disorder based on ignorance of the disorder), *report and recommendation adopted*, 2021 WL 5088023 (W.D. Pa. Nov. 2, 2021); *McKissick v. Cnty. of York*, No. 09-1840, 2010 WL 1930132, at *7 (M.D. Pa. Mar. 19, 2010) (allowing ADA claim to proceed where it was alleged that inmate was denied prescribed methadone treatment even after he directly brought his condition and care needs to the defendants' attention), *report and recommendation adopted*, No. 09-1840, 2010 WL 1930144 (M.D. Pa. May 13, 2010).  These claims will be served for a responsive pleading.

## IV.     CONCLUSION

For the foregoing reasons, we will dismiss with prejudice Mr. Miller's claims against CCP and his official capacity claims against the individual Defendants.  Mr. Miller's Fourteenth Amendment deliberate indifference claims, his claims asserted pursuant to *Monell*, and his claims asserted under the ADA and the RA will be served for a responsive pleading.